**Henry W. GROVER, of Belfast, County of Waldo, State of Maine, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of the Department of Health, Education and Welfare, Defendant.**

Civ. No. 1502.

United States District Court
D. Maine, N. D.

Oct. 22, 1965.

---

Seymour Nathanson, Portland, Me., Forrest W. Pinkham, Boston, Mass., for plaintiff.

David G. Roberts, Asst. U. S. Atty., Bangor, Me., for defendant.

GIGNOUX, District Judge.

This is an action brought under Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), for review of a "final decision" of the Secretary of Health, Education and Welfare affirming the denial by a Social Security Administration hearing examiner of plaintiff's application for the establishment of a period of disability and for disability insurance benefits under the provisions of Sections 216(i) and 223 of the Act. 42 U.S.C. §§ 416(i) and 423. It is admitted that plaintiff has exhausted his administrative remedies. In accordance with the statute, the Secretary has filed as part of his answer a certified copy of the transcript of the record including the evidence upon which the findings and decision are based. Both parties have moved for summary judgment, and have filed briefs and presented oral argument in support thereof.

Under the Act, review by the Court is limited to a determination of whether there is substantial evidence in the record to support the findings of the Secretary.[1] After reading and considering the entire record in this case, the Court concludes that the finding of the Secretary that plaintiff failed to establish, as required by the Act, that he was unable, at any pertinent time,[2] "to engage in any substantial gainful activity" by reason of any "medically determinable physical or mental impairment," is supported by substantial evidence.[3]

Plaintiff, a resident of Belfast, Maine, who was 64 years old at the time of the hearing, has sustained two severe accidental injuries, one a compound fracture of the right leg, while working as an inplant equipment operator for Bird & Son, Inc., on October 14, 1935, and the other a fracture of the left hip on December 27, 1958, while employed as a "sticker" by the Penobscot Poultry Company in Belfast. After plaintiff recovered from his left hip injury, he returned to work as a sticker at the Penobscot Poultry Company on July 20, 1959, and remained employed through September 28, 1959.[4] On November 3, 1959 he filed an application to establish a period of disability and for disability insurance benefits. This application was denied, and no appeal was filed. On August 7, 1962 plaintiff again filed for a period of disability

1. Section 205(g) of the Act, which prescribes the scope of court review, provides in material part:
"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *." 42 U.S.C. § 405(g).

2. The periods in issue in this proceeding are from September, 1959 to November 7, 1962 for the purpose of establishment of a period of disability under Section 216(i) of the Act, and from September, 1959 to November 1, 1962 for the purpose of entitlement to disability insurance benefits under Section 223 of the Act.

3. Section 216(i) of the Act, which defines "disability," provides in material part:
" * * * (T)he term 'disability' means (A) inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration * * *." 42 U.S.C. § 416(i)
Section 223(c) (2) of the Act contains the same definition.

4. A "sticker" involves the rapid slaughtering of chickens. The job requires the use of both hands from a sitting position. Plaintiff testified that after his return to work, the production line had been speeded up and he was not fast enough to keep up with the younger men. He also testified that after two weeks his employer moved him to other jobs, but that he was unable to do these because they required standing all day long.

and for disability insurance benefits, and it is the denial of the August 7, 1962 application which is the subject of this review.

The substance of plaintiff's complaint is to the effect that the combination of the fracture of his right leg and the fracture of his left hip has permanently disabled him.[5]

Plaintiff's complaint is a type of complaint which is difficult to evaluate, especially where, as here, the medical testimony is in conflict. Dr. Allan Woodcock, a specialist in orthopedic surgery, who had examined plaintiff in September, 1962, was the only physician who testified at the hearing. According to his testimony there was no residual impairment of plaintiff's right leg which would be considered disabling, and there were no objective medical findings which would indicate an inability to sit comfortably and which would support plaintiff's claim of permanent disability to engage

in some form of sedentary employment, because of his left hip injury.[6] On the contrary, Dr. Woodcock testified that in his opinion claimant should have no problem in performing a sitting job or in doing alternating sitting and standing work.[7] Dr. Robert A. Apostal, a psychologist and vocational expert, after interviewing and testing the claimant, testified to the effect that there were local jobs of an unskilled sedentary and semi-sedentary nature "which Mr. Grover could do." [8]

Plaintiff's evidence consisted primarily of two written reports from physicians, Dr. Robert C. Cornell and Dr. George L. Temple, both orthopedic surgeons, who had examined plaintiff in June and July, 1963 at the request of his attorney.[9] Dr. Temple's conclusion was:

"In my opinion this man is unable to work at any of the possible jobs available to him in this area. He is

---

5. Plaintiff also complains of a stomach ulcer, which has been in existence for over 30 years. It is clear from the evidence, however, that plaintiff's ulcer did not significantly interfere with his ability to engage in substantial gainful employment during any period in issue in this proceeding.

6. The pertinent testimony of Dr. Woodcock with respect to plaintiff's left hip was as follows:
"Q. Now, on the basis of what you found in your examination, what is your objective findings? Was there anything in there that would indicate inability to sit comfortably?
"A. Well, I wouldn't think so. Can't say YES or NO to that but I wouldn't think so.
"Q. I mean did you find anything that would indicate that?
"A. No * * *."

7. The pertinent testimony of Dr. Woodcock with respect to plaintiff's job capability was as follows:
"Q. From what you found, would this prevent him from doing work where he would sit down part of the time and stand up part of the time—where he'd do it alternatingly?
"A. I think he could probably do something like that because his arms are all right.

"Q. How about a sitting job where he would be sitting a large part of the time?
"A. That would be also.
"Q. Do you feel that he should avoid work requiring prolonged standing?
"A. It seems to me it could bother him, yes."

8. The cases generally hold that the Secretary must show that there are occupations which are realistically open to one with the claimant's physical limitations and his educational and vocational history. "Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available. * * *" Kerner v. Flemming, 283 F.2d 916, 921 (2d Cir. 1960); see also Cochran v. Celebrezze, 325 F.2d 137, 139 (4th Cir. 1963). On the other hand, "It is not the duty or the burden of the Secretary to find a specific employer and a specific job for the claimant." Celebrezze v. Bolas, 316 F.2d 498, 507 (8th Cir. 1963); Turner v. Ribicoff, 224 F.Supp. 284, 288 (S.D.Ala.1963).

9. Plaintiff's assertions that his activities have been greatly restricted are also supported by affidavits signed by his wife, his daughter, his brother-in-law (who acted as his attorney), and two friends of long-standing.

limited in the type of work that he can do because of his lack of education. Work involving standing, sitting or walking for any prolonged period cause considerable pain in the region of the left hip and the findings on physical and x-ray examination show sufficient changes to account for this."

Dr. Cornell's opinion was to the same effect.

 As has been indicated, the only issue before this Court is whether there is substantial evidence in the record to support the decision of the Secretary. The evidence, particularly the opinions of the three doctors as to the plaintiff's disability, was clearly conflicting. There was substantial evidence each way, and the resolution of this conflict was for the hearing examiner, as the trier of fact. Cf. Celebrezze v. Bolas, supra, 316 F.2d at 506. Thus, the hearing examiner was entitled to rely on the opinion of Dr. Woodcock that while plaintiff's orthopedic impairments would interfere somewhat with his ambulation, he could work sitting or work alternately sitting and standing. He was entitled to reject the contrary conclusions of Dr. Cornell and Dr. Temple. The hearing examiner was also entitled to rely upon the uncontroverted testimony of Dr. Apostal that there were jobs of a sedentary and semi-sedentary nature available in the Belfast area which were well within plaintiff's residual capability to perform. Finally, the hearing examiner was justified in noting that plantiff had made no attempt to secure employment of a sedentary or semi-sedentary nature in the Belfast area; that he had not sought any medical treatment or taken any significant amount of pain-killing medication during the period in issue; that he was not using a cane or a crutch; that he drove his own car with a gear shift, a brake pedal and a clutch pedal; and that he was able to work on his feet for 1½ to 2 hours around his overnight cabins. In summary, whether or not the hearing examiner might properly have reached a different result, this Court cannot say as a matter of law that his decision is not amply supported by the evidence.

The Court holds that there is substantial evidence in the record to support the hearing examiner's finding that "(T)he claimant's impairments, either singly or in combination, did not make him continuously 'disabled' within the meaning of the Act starting at any time during the period in issue."

The defendant's motion for summary judgment is granted; the plaintiff's motion for summary judgment is denied; and the Clerk shall enter judgment affirming the decision of the defendant Secretary and dismissing the complaint.

It is so ordered.